IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-03407-FL

| | | |
|---|---|---|
| RANDOLF MORRISON, Plaintiff, | ) | |
| v. | ) | ORDER |
| DR. CHARLOTTE ANN EVANS, Defendants.[1] | ) | |

This matter is before the court on defendant's motions for summary judgment (DE 57) and to seal records filed in support thereof (DE 65). Plaintiff responded in opposition to the motion for summary judgment and in this posture the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a state prisoner proceeding pro se, commenced this action by filing complaint asserting claims for violations of his civil rights pursuant 42 U.S.C. § 1983. After reviewing plaintiff's various pleadings pursuant to 28 U.S.C. § 1915(e)(2)(B), the court allowed plaintiff to proceed with his claim alleging defendant Dr. Charlotte Ann Evans violated his rights under the First and Eighth Amendments to the United States Constitution. With respect to the Eighth Amendment claim, plaintiff alleges defendant discontinued plaintiff's prescription for Tegretol, which caused him to suffer a seizure on February 7, 2020, and refused to resume the medication

[1] The court constructively amends the case caption to reflect dismissal of plaintiff's claims against former defendants Nurse Rhonna Medlin and Shaela Shannon on March 1, 2024, as well as defendants Kendall Mullen, Al-Kereen Whichard, Brandon Scott, and Jordan Belfield on June 16, 2026.

despite continued seizure activity. As to the First Amendment claim, plaintiff asserts defendant's decision to discontinue his seizure medication was in response to plaintiff reporting her to the medical board.

Following a period of discovery, and in accordance with the case management order, defendant filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), and to seal records filed in support thereof. Defendant argues that the undisputed record evidence shows she did not act with deliberate indifference to plaintiff's serious medical needs and that she is entitled to qualified immunity. In support of the motion, defendant relies upon memorandum of law, statement of material facts, and appendix of exhibits thereto consisting of her declaration and excerpts from plaintiff's medical records.

Plaintiff responded in opposition to defendant's motion, arguing that genuine disputes of material fact preclude summary judgment, and that defendant is not entitled to qualified immunity. In support, plaintiff relies upon memorandum of law, his personal declaration, and excerpts from his medical records.

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. During the relevant time period, plaintiff was an inmate in the custody of the North Carolina Department of Adult Correction, and defendant worked as a family medical doctor at Pasquotank Correctional Institution ("Pasquotank"). (Def's SOMF (DE 63) ¶¶ 1–2).[2]

[2] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management/electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

On May 28, 2019, plaintiff began taking the medication Tegretol, also known as Carbamazepine. See ((DE 62) ¶ 15(b)). On October 25, 2019, Shemeka Lewis, a nurse at Pasquotank made an administrative note in plaintiff's medical records indicating she had educated plaintiff on missed doses of his Tegretol prescription and the importance of taking the medication. ((DE 61), p. 1). In response, plaintiff stated that he "works and sometimes has missed a dose." (Id.) Then, on December 19, 2019, plaintiff attended an appointment with defendant and she noted plaintiff was "not compliant with AM Tegretol, taking evening dose 'as needed.'" (Id. p. 3). Plaintiff told defendant that he hoped to wean himself off the medication and that the only time he needed the medication was "around a headache." (Id. p. 4). Defendant discontinued plaintiff's Tegretol for noncompliance. (Id. p. 3).

On February 7, 2020, there was a power outage at Pasquotank. (Def's SOMF (DE 63) ¶ 4; (DE 70-5) ¶ 6). At approximately 8:00 p.m., plaintiff got up to use the restroom in his cell, and "believe[s] that, while [he] was out of [his] bunk, [he] suffered a seizure, fell over the toilet, hit [his] head, and was knocked unconscious." ((DE 70-5) ¶ 6). Correctional staff discovered plaintiff on the floor of his cell and called a "Code Blue medical emergency." (Id. ¶¶ 8-9). As correctional staff was escorting plaintiff down the stairs, he "appeared to have another seizure." (Id. ¶ 10). Plaintiff then slid down the remainder of the stairs until he hit the bottom floor. (Id.) Correctional staff next placed plaintiff in a wheelchair and transported him to the main medical unit. (Id. ¶ 11).

At the medical unit, plaintiff was evaluated by Rhonna Medlin ("Medlin"), a nurse, and told Medlin the following: "I don't know what happened, my face and nose is numb." ((DE 61), p. 7). Plaintiff also reported to Medlin that he "just woke up on the floor." (Id. p. 8). Plaintiff

stated that he needed to be put back on his "seizure medication." (Id.) The next day, plaintiff was evaluated by Michelle Demery ("Demery"), a nurse. (Id. p. 10). Plaintiff reported to Demery that he had a seizure the prior day, that his right eye hurt, and that his lower back hurt ten out of ten. (Id. p. 10). Plaintiff also asked Demery why he had been taken off his seizure medication, and requested that the medication be reinstated, but only the evening dose. (Id. pp. 10, 11). Demery provided plaintiff with Ibuprofen and ordered a lumbar spine x-ray. (Id. pp. 11, 12). Defendant co-signed the nurse's order. (Id. p. 13).

On February 20, 2020, defendant made the following administrative note: "I have discussed 'seizure' incident and fall with both custody and nursing, no fall, no post-ictal behavior, no seizure activity observed on 2/7/20 or since." (Id. p. 14). Defendant next evaluated plaintiff on February 27, 2020, and made the following note:

> offender claimed to have had seizure but it was not witnessed, custody has reviewed tape, offender was not post-ictal after 'scooting down the stairs' no injuries were noted at the time. offender also c/o back pain and right eye pain, but showed no objective evidence of discomfort.
>
> brought to recreation cell by custody, gait normal, moves all 4 extremities well, CN 2-12 grossly intact wearing tinted lenses in glasses
>
> repeatedly stated that he needed his seizure meds back, despite multiple explanations that no witnessed seizure, no meds indicated.

(Id. p. 15). Defendant prescribed plaintiff Acetaminophen and terminated the visit "due to persistence in resuming requests for seizure meds." (Id. pp. 15-16).

On March 4, 2020, plaintiff again was evaluated by Demery after he was found by custodial staff lying on the floor of his cell "jerking and foaming at the mouth." (Id. p. 19). Demery noted

plaintiff was alert and oriented. (Id.) Defendant was notified and no new orders were given. (Id.) On April 2, 2020, defendant made the following administrative note: "Sick call form reviewed, c/o seizure, wants his meds back no witnessed seizure, no injuries and no wet boxers noted. offender has never had a witnessed seizure." (Id. p. 22). Defendant again noted on July 27, 2020, that plaintiff "claims to have had seizures, but none have ever been witnessed." (Id. p. 27).

On July 21, 2020, plaintiff was evaluated by Kanisha Joyner, a nurse. (Id. p. 28). Plaintiff reported: "I have woke up 3 weeks ago on the floor and my underwear have been soaked with urine. I have been buying seizure medications from the yard pharmacist." (Id.) Plaintiff told the nurse that he did not report the alleged seizure activity to "custody because nothing will be done." (Id. p. 29). On July 27, 2020, defendant noted plaintiff "claims to have had seizures, but none have been witnessed." (Id. p. 27).

On July 8, 2021, defendant evaluated plaintiff in response to plaintiff's complaint that he had a seizure. (Id. p. 32). Plaintiff told defendant that his last seizure had been so long ago that he could not remember it. (Id.) Plaintiff also told defendant that he had woken up on the floor two months prior, but did not report the seizure and stated that he "just deals with it." (Id.) After evaluating plaintiff, defendant made a utilization review request for a neurology consultation. (Id. p. 33). On November 16, 2021, plaintiff attended a neurology telehealth consultation with Dr. Babu Subramaniam for evaluation of seizure disorder. (Id. p. 37). Dr. Subramaniam noted plaintiff's history of self-reported seizure activity since 2004 and that plaintiff's "clinical spells" have been mostly unwitnessed. (Id.) Dr. Subramaniam also noted that a prior MRI of plaintiff's brain in 2016 was normal. (Id.) Dr. Subramaniam's assessment was epilepsy, unspecified, not

intractable, and he recommended continued management and "follow-up at Sick Call as Needed." (Id.)

## DISCUSSION

A. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[3]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a

[3] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant' s] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

Plaintiff alleges defendant was deliberately indifferent towards his serious medical needs by discontinuing his seizure medication resulting in him having a seizure on February 7, 2020, and by not resuming his medication following his alleged continued seizure activity. Under the Eighth Amendment, prison officials' "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The inmate must demonstrate both a serious medical need, and that prison officials were

deliberately indifferent to that need. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241.

The deliberate indifference standard requires "that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer v. Brennan, 511 U.S. 825, 837 (1994). An inmate therefore must demonstrate the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson, 775 F.3d at 178. In addition, negligence or medical malpractice in diagnosis or treatment do not standing alone establish an Eighth Amendment claim for deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976). Thus, "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim." Wright, 766 F.2d at 849.

Here, plaintiff establishes at most a disagreement with defendant regarding her decisions related to plaintiff's seizure medication. Plaintiff's medical records reflect defendant discontinued plaintiff's seizure medication in December 2019 due to his non-compliance with taking the medication. See ((DE 61), pp. 1-4). While plaintiff continued to request the resumption of his seizure medication after his alleged seizure on February 7, 2020, and alleged continued seizure activity, defendant determined plaintiff did not have an active seizure disorder

because there was no post-ictal state and because no seizures were witnessed. It is well-settled that a disagreement regarding medical treatment does not constitute an Eighth Amendment violation. See e.g., Hixon v. Moran, 1 F.4th 297, 302-303 (4th Cir. 2021); Wright, 766 F.2d at 849.

Even assuming, without deciding, that defendant's treatment fell short of the applicable standard of care, that is insufficient standing alone to show deliberate indifference. See Wright, 766 F.2d at 849; see also Jackson, 775 F.3d at 178 ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference."). As a result, the undisputed record evidence shows defendant was not deliberately indifferent to plaintiff's alleged need for seizure medication. Defendant's motion for summary judgment is granted as to plaintiff's Eighth Amendment claim.

The court next turns to plaintiff's contention that defendant discontinued his seizure medication in retaliation for plaintiff reporting her to the medical board. To establish a retaliation claim, plaintiff must show: 1) that he engaged in constitutionally protected First Amendment activity; 2) the defendant took an action that adversely affected that activity; and 3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015); see also Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rectors and Visitors of George Mason University, 411 F.3d

474, 500 (4th Cir. 2005).

A claim of retaliation is treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (noting that "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prison misconduct") (citation omitted). A plaintiff must adduce specific facts supporting the claim of retaliation because bare assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994). Here, plaintiff offers no facts supporting a causal relationship between reporting defendant to the medical board, and the discontinuation of his Tegretol. Plaintiff merely provides the conclusory statement such actions were taken in retaliation, which is insufficient to state a claim for a constitutional violation. Accordingly, the court dismisses plaintiff's retaliation claim pursuant to 28 U.S.C. § 1915(e)(2)(B).[4]

B. Motion to Seal

Defendant moves to seal filings in support of her motion for summary judgment that contain plaintiff's personal medical information. See (DE 61-65). Plaintiff does not object to sealing these records. The public has received adequate notice of the motion to seal. No less drastic alternative to sealing these documents is available because private information appears throughout the filing. Plaintiff's interest in preserving the confidentiality of his private health conditions outweighs any public interest in disclosure. Thus, the court grants the motion to seal.

[4] Section 1915(e)(2) provides that where the plaintiff proceeds in forma pauperis, the court may dismiss the action "at any time" if it determines the plaintiff has failed to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

**CONCLUSION**

Based on the foregoing, defendant's motions for summary judgment (DE 57) and to seal (DE 65) are GRANTED. Plaintiff's retaliation claim is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B). The clerk is DIRECTED to maintain docket entries 61, 62, 63, and 64 under seal, and to close this case.

SO ORDERED, this the 9th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge